DELL PUBLISHING Co., INC., Plaintiff, *v.* ULTEM PUBLICATIONS, INC., and Others, Defendants.

Supreme Court, Special Term, New York County, May 17, 1939.

*Townley, Updike & Carter* [*Stuart N. Updike* and *Carl S. Forsythe* of counsel], for the plaintiff.

*Louis H. Solomon* [*Louis H. Solomon* and *Alfred B. Leventhal* of counsel], for the defendants.

COTILLO, J. This action, based upon alleged unfair competition and trade-mark and trade name infringement, was instituted by the plaintiff seeking the following relief:

(1) To restrain the defendants from appropriating plaintiff's well-established trade-marks and trade names, designated as *Modern Magazines, Modern Screen* and *Modern Romances*, and

(2) To compel defendants to abandon the use of the name "Modern" and the imitation and copying of plaintiff's publication *Modern Magazines* in connection with defendants' magazine *Modern Movies*.

The plaintiff has been engaged for many years in the publication and selling of magazines and periodicals. In 1930 it began publishing through a subsidiary company called the Syndicate Publishing Company, Inc., two magazines and named them *Modern Screen* and *Modern Romances*. In 1930, during the month of July the plaintiff acquired these magazines from its subsidiary and began the publication of them under its own name, and has since 1930 used the name *Modern Magazines* either through its own efforts or that of its subsidiary for the purposes of procuring advertising in, stimulating circulation of, and identifying a group of magazines published by it or its subsidiary. It claims that in its publication of individual magazines it found that advertisers and advertising agencies handling nationally-known products did not approve individual magazines as good national advertising media and found that by grouping magazines under a general and combined name it became an attractive advertising proposition. It, therefore, grouped its several magazines for advertising purposes under the name *Modern Magazines* and soon led the advertising in the competitive field. Among this group is *Modern Screen* and *Modern Romances*. *Modern Romances* was registered as a trade-mark in the United States Patent Office on June 28, 1932, and *Modern Screen* on March 14, 1933. A third magazine, *Radio Stars*, was also published as a member of this group. In jointly promoting these magazines it claims to have expended the sum of $1,801,514.91 and conducted extensive campaigns in various publications and by means of circulars. Advertising was sought for *Modern Magazines* as a group and not for the individual publications. The combined guaranteed circulation is about 1,300,000 copies per single issue, or a yearly total of 16,000,000 copies, and its annual gross from advertising is in excess of $1,000,000. *Modern Screen* is a publication appealing to the public interest in the motion picture industry and entertainment field, and *Modern Romances* is a publication appealing to the public in its true personal stories and articles of a romantic tenor.

The defendants are the owners and publishers of a magazine known as *Modern Movies* and its first issue appeared during June, 1937.

The defendants offered no evidence and rested their case on the proof adduced by the plaintiff.

The questions the court is called upon to determine are whether or not the word " Modern " is an arbitrary or fanciful word, or whether it is descriptive, and whether a secondary meaning has attached to the name " Modern " as applied to the names of the magazine group of the plaintiff, and do the acts of the defendants in publishing their magazine *Modern Movies* constitute unfair competition and trade-mark infringement by creating, or tending to create, confusion among advertisers, the trade and the public in general (a) in relation to the use of the term " Modern " as part of the title, and (b) in relation to the defendants' simulation of the make-up and editorial content of plaintiff's magazine.

Both magazines are of the same size and both emphasize the word " Modern " in large letters on the covers. Both magazines specialize in carrying photographs of screen favorites, both male and female, on the cover. The layouts of the covers are similar except as to the color scheme. Until recently defendants' magazine sold for fifteen cents, while the price of the plaintiff's was ten cents. Defendants now have reduced the price of their magazine to ten cents as well.

Litigation of this character, both in the field of ordinary business and the publishing field cannot be decided by blindly following precedents. Due consideration must always be given to the peculiar features characterizing a given case. There is no doubt that the word " Modern " is a generic term, but it is not descriptive of the contents of the magazine or of its origin. Consequently, cases based upon that theory are not a perfect guide in the decision here. For example, in *Munro* v. *Tousey* (129 N. Y. 38) the court refused to enjoin the word " Sleuth " as part of defendant's title although plaintiff showed prior use of the name. Here, " Sleuth " is clearly understood to mean a detective and the word is, therefore, descriptive of the contents. For the same reason plaintiff, who published the magazine called *G-Man*, could not restrain defendant from using the title *Ace G-Man*. (*Beacon Magazines, Inc.*, v. *Popular Publications, Inc.*, 248 App. Div. 204.) The appellation had become descriptive of a Federal investigator and could not, therefore, be regarded as anything but descriptive. So in *Collegiate World Pub. Co.* v. *DuPont Pub. Co.* (14 F. [2d] 158), *College Humor* sought to restrain the use of " College Comics." Here " Humor " and " Comics " are both descriptive of the nature of the contents and " College " is descriptive of the origin. An injunction was also denied.

Compare this situation with *Modern Screen* and *Modern Movies*. There is no doubt of the descriptive character of " Screen " and " Movies." As to the term " Modern " the situation is somewhat different. Defendants point out that the number of publications with the term " Modern " are legion. If plaintiff endeavored to appropriate the term in connection with a magazine of a general content, there would be no reason for granting it a monopoly. Such a situation might arise in connection, possibly, with an endeavor to restrain competition in a general field, where the term "Modern " is used. But here the endeavor is only to restrain competition in the use of the term " Modern " in relation to a movie publication. The situation thus differs from that in *Time, Inc.,* v. *Ultem Publications, Inc.* (96 F. [2d] 164). In that case the magazine *Life* sought to restrain *Movie Life* from using the term " Life." An injunction in respect of the title was refused, because both the two magazines did not cover the same field; at the same time an injunction was granted to avoid confusion in the dress of the cover.

Plaintiff's term " Modern " has acquired a secondary meaning as applied to its magazine featuring the movie picture world. Whether or not it has acquired such a secondary meaning in the general magazine field it is unnecessary to discuss because the question does not confront us. The conclusion arrived, which might be debatable, becomes decisive when it is considered that defendants in the contents of their departments, in the make-up of the inside pages, have imitated plaintiff's magazine. True, there is no monopoly in ideas, unless their concrete embodiment has been patented or copyrighted. There is nothing, superficially considered, which is to stop defendants from adopting ideas and features in their publication, which may have been originated or extensively used by plaintiff. This statement is, of course, subject to any limitations which may be imposed by the copyright laws. On the other hand, when such imitative features are adopted by defendants, their use of the term " Modern " becomes a real source of unfair competition. Until the issue of March, 1939, the inside photographic pages of their magazine, while closely following plaintiff's feature, was at least characterized by a green tone instead of plaintiff's brown tone, but in March, 1939, defendants also began to use the brown tone. The result of this imitation is that a person picking up defendants' magazine at a news stand, at random, might do so in the belief that he was reading plaintiff's magazine, and he might remain under this mistaken idea for some time. This confusion should not be tolerated, because it is a deception to the ultimate consumer. While, as I said, there is nothing to stop

defendants from borrowing ideas or features of plaintiff's magazine, or of other magazines, within the limits of the copyright, trademark and patent laws, this should not be encouraged by permitting defendants to use the title " Modern " in connection with the title of their magazine.

There will be a decree for the plaintiff. Submit findings and judgment on notice.