CLIFFORD T. ROGERS et al., Appellants, *v.* ASSOCIATION FOR THE HELP OF RETARDED CHILDREN, INC., Respondent.

Argued October 6, 1954; decided December 31, 1954.

*Daniel F. Kelley* for appellants.  I. The present use made of the premises by defendant is not the identical use made thereof by the former owner or a tenant of the owner.  II. The former owner never operated or used the premises as a school, nor did its board of directors, nor did any of its employees conduct a school upon the premises.  III. The educational instruction given at the Home was a mandatory requirement of the compulsory Education Law of the State of New York and was carried on in the premises by the Board of Education of the City of New York.  IV. Plaintiffs have shown that they have suffered or will suffer special damage, and hence have a right to bring this action.  (*Rice* v. *Van Vranken,* 255 N. Y. 541.) V. Plaintiffs have sustained actual damage.  VI. Where property owners suffer a diminution in the value of their properties by reason of the violation of a zoning ordinance, they have a cause of action in equity to restrain such violation.  (*New York Cement Co.* v. *Consolidated Rosendale Cement Co.,* 178 N. Y. 167; *Rice* v. *Van Vranken,* 132 Misc. 82, 225 App. Div. 179, 255 N. Y. 541; *Marcus* v. *Village of Mamaroneck,* 283 N. Y. 325.) VII. That the village has a right to determine what zoning plans will promote public welfare is a legislative question with which the courts may not generally interfere.  (*Wulfsohn* v. *Burden,* 241 N. Y. 288; *Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330; *Matter of Fox Meadow Estates* v. *Culley,* 233 App. Div. 250.) VIII. An individual's conduct and use of his property may be regulated in the exercise of police power.  (*Lincoln Trust Co.* v. *Williams Bldg. Corp.,* 229 N. Y. 313; *Shepard* v. *Village of Skaneateles,* 300 N. Y. 115; *Heimerle* v. *Village of Bronxville,* 168 Misc. 783; *Village of Old Westbury* v. *Foster,* 193 Misc. 47.)

IX. Defendant having acquired its property after the adoption of the ordinance is presumed to have acquired same subject to the ordinance. (*Lincoln Trust Co.* v. *Williams Bldg. Corp.,* 229 N. Y. 313; *Matter of Clark* v. *Board of Zoning Appeals of Town of Hempstead,* 301 N. Y. 86.) X. Unless the continuance of nonconforming use is identical with the prior use of the premises by the owner or tenant, the same must be enjoined. (*City of Buffalo* v. *Roadway Tr. Co.,* 303 N. Y. 453; *President & Trustees of Vil. of Ossining* v. *Meredith,* 275 App. Div. 850; *Matter of Eaton* v. *Sweeny,* 232 App. Div. 459; *Matter of Pisicchio* v. *Board of Appeals of Vil. of Freeport,* 165 Misc. 156.) XI. Aesthetic considerations might be considered as auxiliary of what thus far have been regarded by the courts as the more effective and sufficient reasons for damages. (*Welch* v. *Swasey,* 214 U. S. 91; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288; *Rice* v. *Van Vranken,* 132 Misc. 82, 255 N. Y. 541.)

*John F. Mulvey, Village Attorney,* for Village of Pelham Manor, *amicus curiæ,* in support of appellants' position. The use of the premises by defendant-respondent is not a continuance of the prior nonconforming use and should be enjoined. (*City of Buffalo* v. *Roadway Tr. Co.,* 303 N. Y. 453; *President & Trustees of Vil. of Ossining* v. *Meredith,* 190 Misc. 142, 275 App. Div. 850; *Eaton* v. *Sweeny,* 232 App. Div. 459; *Matter of Pisicchio* v. *Board of Appeals of Vil. of Freeport,* 165 Misc. 156; *Yuba City* v. *Cherniavsky,* 117 Cal. App. 568; *Matter of Shoen* v. *Bowne,* 273 App. Div. 1020, 298 N. Y. 611; *Matter of Furman Ave. Realty Corp.* v. *Board of Standards & Appeals of City of N. Y.,* 275 App. Div. 779, 299 N. Y. 768; *City of Lynn* v. *Deam,* 324 Mass. 607; *People ex rel. Cairns* v. *Murray,* 148 N. Y. 171.)

*John J. O'Neil* for respondent. I. The present operation of defendant is a continuing nonconforming use. (*People ex rel. Facey* v. *Leo,* 230 N. Y. 602; *Keenly* v. *McCarty,* 137 Misc. 524; *People* v. *Perkins,* 282 N. Y. 329.) II. Plaintiffs, having failed to show pecuniary loss or damages, are not proper parties to bring this action. (*Juran* v. *Title Guar. & Trust Co.,* 151 Misc. 631; *Lair* v. *Grant,* 137 Misc. 470; *People* v. *Canal Bd. of State of N. Y.,* 55 N. Y. 390; *Marcus* v. *Village of Mamaroneck,* 283 N. Y. 325; *Rice* v. *Van Vranken,* 132 Misc. 82, 225 App. Div. 179, 255 N. Y. 541; *Shallow* v. *Metropolitan Life Ins. Co.,* 278

App. Div. 328.) III. Plaintiffs-appellants cannot succeed in the absence of a showing that defendant-respondent's operation is a nuisance per se. (*Owid* v. *Moushaty*, 125 Misc. 535; *Whitridge* v. *Park*, 179 App. Div. 884; *City of Mount Vernon* v. *Seeley*, 74 App. Div. 50; *Village of New Rochelle* v. *Lang*, 75 Hun 608.)

LEWIS, Ch. J. The plaintiffs are owners of residential properties in the village of Pelham Manor, Westchester County, which are located either contiguous to, or in the immediate vicinity of, improved property known as No. 975 Split Rock Road, owned by the defendant corporation. The purposes for which the defendant corporation was organized are "To voluntarily assist the slow and mentally retarded child and to ascertain through study and research, the problems and causes of mental retardation and means for improving the condition of the child; develop a better understanding of, and more wholesome and helpful attitude toward mental retardation; to serve as a clearing house for information about the mentally retarded child, and to voluntarily assist parents of the mentally retarded child, in meeting their problems."

By their complaint herein plaintiffs allege in substance that it is the purpose of the defendant corporation to conduct on its premises at No. 975 Split Rock Road, in accord with its corporate powers, a school for the mental and physical development of mentally retarded children; that such uses of its property by the defendant are in violation of the zoning ordinance of the Village of Pelham Manor which prohibits the maintenance in that village of an "institution for the care of invalids or mental defectives"; that the presence of defendant's pupils at its school or institution and in the village will of necessity cause close and intimate contact between said mental defectives and plaintiffs and plaintiffs' children, and that such daily contact and the action and mannerisms of said mental defectives will have a profound, deleterious, depressing effect upon the minds, hearts, emotions and nervous systems of plaintiffs and particularly of plaintiffs' children and that plaintiffs' health and the health of plaintiffs' children will thereby be impaired; that the presence of these numerous mental defectives in the midst of such a highly residential section of the village of Pelham Manor and their close and intimate contact with the average normal child of plaintiffs will unfortunately and of necessity give rise

to many unpleasant incidents upon the public streets and thoroughfares of the village between them and plaintiffs' children whereby breaches of the peace will or may be occasioned and plaintiffs will be thereby harassed and annoyed and will become embroiled and involved in endless litigation both of a civil and criminal nature; that the value of plaintiffs' real and personal property and their health, safety and welfare will be adversely affected, and that plaintiffs will suffer and will continue to suffer irreparable damage and diminution in the value of their properties. Upon the foregoing and other allegations, plaintiffs seek injunctive relief restraining the defendant from using its property at No. 975 Split Rock Road for its corporate purposes, or as a school or institution for the care and physical or mental development of mentally retarded children, and from using its property for any purpose other than a residence.

By denials in its answer the defendant puts at issue allegations in the complaint which assert its illegal use of its property; denies that plaintiffs' properties have been and will be diminished in value and that the welfare of plaintiffs' children will be adversely affected by the defendant's use of its property. As a separate defense the defendant alleges that for many years prior to the local zoning ordinance in the village of Pelham Manor, the property known as No. 975 Split Rock Road was used as a school for the education and improvement of children who suffered from cardiac disorders which prevented them from attending the public schools of the State of New York; that such use having been made of the property prior to the passage of the zoning ordinance of the Village of Pelham Manor became a nonconforming use; that the defendant purchased its property with the sole intention of operating a school for the instruction of younger children and of children of a tender age who could not, under ordinary circumstances, be admitted to public schools.

Upon the trial at Supreme Court, Special Term, two issues were litigated: (1) whether the plaintiffs had suffered special damages entitling them to maintain the present action to enforce the zoning ordinance; and (2) whether the defendant's school was a continuation of a legal nonconforming use — within a provision of the zoning ordinance of Pelham Manor which provides: " A change of ownership or tenancy shall not be deemed a discontinuance of a non-conforming use provided the subse-

quent use is identical with the non-conforming use of the prior owner or tenant."

On the first issue the Trial Justice made a finding of fact that plaintiffs have sustained or will sustain a diminution of the pecuniary value of their property by reason of the use presently being made of defendant's property as a school for mentally retarded children. On the second issue the Trial Justice found that the present use made of its premises by the defendant is that of a school for mentally retarded children, whereas the former uses were those of an institution and home for poor children in the country and subsequently as an institution for the care of children suffering from cardiac distorders; and that the present use of the premises by the defendant herein is not the same identical use that was made of the premises by any of the former owners.

At the Appellate Division, where the judgment entered at Special Term was reversed on the law and facts and the complaint was dismissed, the order reversed and set aside the finding of fact last mentioned above and made new findings as follows: That the health, welfare and safety of the plaintiffs were not adversely affected by the defendant's use of its premises; that the presence of mentally retarded children on the defendant's property did not cause hardship to the families of the plaintiffs; that the method of education afforded by the defendant to mentally retarded children did not disturb the peace and quiet of the neighborhood, nor did those children cause damage to plaintiffs' property or bodily harm to anyone in the neighborhood; that " The education and schooling given by the defendant to teach them [the mentally retarded children] the regular school curriculum enables them to some degree to take their place in society "; that the present use of its property by the defendant is the same as one of the uses made of the premises by the former owner.

After reversing and disallowing each conclusion of law made at Special Term the Appellate Division made conclusions of law as follows: That the Pelham House for Children, Inc. (defendant's predecessor in title) enjoyed two nonconforming uses — (1) as an institution for treatment of cardiac children, and (2) as a school; that there has been no abandonment of the nonconforming uses enjoyed by the prior owner; that a certifi-

cate of occupancy is not required for the continuance of a nonconforming use; that the defendant's use of the property was a continuance of a nonconforming use; that defendant's predecessor in title used the premises as a school in conjunction with the use of the premises as a cardiac home for children.

In support of the new findings by the Appellate Division, there is evidence of record that the Pelham Home for Children, Inc., from 1915 until 1950 — in which latter year it sold its property to the present defendant — had accepted from Bellevue Hospital in New York City for convalescent care, children suffering from cardiac ailments. As the children were residents of New York, the board of education of that city furnished at least one teacher for the instruction required for an eight-year grammar school course. Daily classes were conducted from September until June when graduation was held. The capacity of the present facilities is forty-five children, most of whom are ambulatory, attending classes on the first floor of the building.

Although plaintiffs did not dispute evidence of these facts, and of the further fact that the Home was an adjunct to New York City Public School No. 192, the plaintiffs contended that the chief reason for the children being at the Home before 1950 was to provide them with medical care while they were recovering from various heart ailments. Two related contentions are also made in this court: (1) that it was *ultra vires* for the prior owner to conduct on the property in suit a school for cardiac children when its charter limited its functions to the " care " of such children; (2) that the school for cardiac children had been staffed and conducted by the Board of Education of the City of New York, not by the prior owner of the property.

In our view it cannot be argued successfully that the care of convalescent children does not include their education, the fact being that the Legislature has ordained their education to be compulsory (see Education Law, art. 65). As to plaintiffs' claim that the use to which the prior owner put the property had been a convalescent home and not a school, we think the argument disregards both the statutory requirement last cited above, and the strong public policy of the State which favors the education of all children, however handicapped. Consequently, we agree with the statement in the Appellate Division opinion (281 App. Div. 978) that " the present use of the prop-

erty as a school for mentally retarded children is a continuation of one of the prior nonconforming uses. At the time of the adoption of the zoning ordinance, the property was used as a convalescent home for cardiac children, an incident of that use being the schooling of the children. *Defendant's present use of the property is a restriction or limitation of the prior nonconforming uses of the property."* (Emphasis supplied.)

We find in the record before us substantial evidence, the weight of which favors the new findings made by the Appellate Division. (N. Y. Const., art. VI, § 7; Civ. Prac. Act, § 605; *Harrington* v. *Harrington,* 290 N. Y. 126, 130; *Pocket Books, Inc.,* v. *Meyers,* 292 N. Y. 58, 61.)

Accordingly, the judgment should be affirmed, with costs.

CONWAY, J. (dissenting). This is an action by property owners in Pelham Manor, Westchester County, to restrain the use by defendant of its property as a school for mentally retarded children in violation of a village zoning ordinance. Special Term and the Appellate Division agreed that the action might be maintained because there was proof that the property of plaintiffs was materially damaged in value by reason of defendant's use of the property. The children here concerned, as we shall see, were mental defectives within the meaning of that term. (Mental Hygiene Law, § 2, subd. 9; cf. *Excelsior Ins. Co.* v. *State of New York,* 296 N. Y. 40.) It has also been established that defendant's use of its property is a violation of the village zoning ordinance unless it is a continuation of a prior nonconforming use.

When the village zoning ordinance was adopted, the property now owned by defendant was owned by the Pelham Home for Children, Inc. (hereinafter called The Home), a domestic membership corporation, organized for a charitable purpose and subject to the jurisdiction of the Supreme Court of the State of New York and the then existing State Board of Charities. It was used as a convalescent home for children afflicted with cardiac conditions who remained at The Home and there received institutional care. The Home was not empowered to conduct a school. Due to the fact that the cardiac-conditioned children were receiving institutional care, educational facilities were required by statute to be furnished to them by the Educa-

tion Law of the State and were a charge upon the community of the domicile of the children. Thus section 3205 of the Education Law requires that " In each school district of the state each minor from seven to sixteen years of age shall attend upon full time day instruction." Pupils at The Home did not fall into the exceptions to that requirement. Section 3204 of the same law provides that " A minor required to attend upon instruction by the provisions of part one of this article may attend at a public school or elsewhere. The requirements of this section shall apply to such a minor, irrespective of the place of instruction." Section 3202 of the Education Law states that if the children are cared for in a duly incorporated institution for the care, custody and treatment of children, then the " trustees or other authorities in charge of any such institution may contract with the trustees or board of education of the school district in which such institution is located for the secular instruction of such children. * * * If such children are not supported and maintained at the expense of a public welfare district, the cost of the secular instruction of such children in the school or schools in the district shall be a charge upon and shall be paid by the school district responsible for their instruction at the time of their admittance to said duly incorporated * * * institution for the care, custody and treatment of children." The children were sent to The Home from Bellevue Hospital, a hospital located in New York City, and were treated as children domiciled in the city of New York. Therefore, a teacher taught the children, some of whom were bed cases, in The Home in Westchester County. That teacher was in the employ of and was paid by the New York City Board of Education and was subject to the board's jurisdiction and control. That was not a school conducted by The Home, the owner of the premises. The Home had no charter power to conduct a school. There is grave doubt as to whether New York City had the power and authority to send one of its teachers to teach outside the limits of the city, but we need not consider that further.

As a result of the discovery and use of new drugs and medicines, there is no longer a sufficient number of cardiac cases to justify the use of The Home for cardiac-conditioned children. As a result, the building and grounds formerly used by The Home have been transferred to the present owner,

the Association for the Help of Retarded Children, Inc. It operates a school for mentally retarded children who receive no medical care and who are brought to the school in the morning and return home in the afternoon. It seems quite clear that while the use by the Pelham Home for Children, Inc., was that of an institution for the care of children suffering from cardiac conditions it was not a school in any sense of the word, while the present use solely as a school and not as a home providing institutional care for children is not a continuance of the original nonconforming use. The children are of an I.Q. of between 30 and 50, which is lower than the I.Q. fixed for children who may be educated in specially formed classes in our public school system. A charge of $35 per month is made for the schooling of each child. Section 202 of the Mental Hygiene Law provides that an institution such as that of defendant must be licensed. Section 1122 of the Penal Law provides for prosecution when a license is not obtained. The institution is not licensed under section 202 of the Mental Hygiene Law.

The whole purpose of the zoning law is to have uniformity of use within the various zones. Nonconforming use is forbidden unless the nonconforming use is a continuation of an *identical* use as it existed prior to the zoning statute. The statute, as quoted in the complaint, reads: " A change of ownership or tenancy shall not be deemed a discontinuance of a nonconforming use provided the subsequent use is *identical* with the non-conforming use of the prior owner or tenant." (Emphasis supplied.) (See *Matter of Furman Ave. Realty Corp.* v. *Board of Standards & Appeals of City of N. Y.,* 299 N. Y. 768.) If there be such prior nonconforming use, its continuance is permitted. It seems clear to us, and cannot be questioned, that the use of the premises by The Home was never a use as a school. The Home had no charter power to conduct a school. The present defendant is lawlessly conducting an unlicensed school on the premises now and that is a use which was never made of them before the zoning statute. The finding by the Appellate Division that the present use of the premises by the defendant is the same as one of the uses that was made of the premises by the former owner, viz., a school, is without evidence to support it and the present use of the property is not a continuance of any nonconforming use by the former

owner. Even if it were, it was clearly not a change to an *identical* use.

Accordingly the judgment appealed from should be reversed, and the judgment of the Special Term should be affirmed, with costs in this court and in the Appellate Division.

DESMOND, DYE and FROESSEL, JJ., concur with LEWIS, Ch. J.; CONWAY, J., dissents in an opinion in which FULD and VAN VOORHIS, JJ., concur.

Judgment affirmed.