■ In the Matter of GRACE ABOUD et al., Appellants, v DONALD WALLACE et al., Constituting the Board of Building and Zoning Appeals of the City of Albany, et al., Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Cobb, J.), entered April 1, 1982 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Board of Building and Zoning Appeals of the City of Albany. The instant proceeding involved the permissible use of a two-story brick building located at 151-153 Chestnut Street in the Center Square area of the City of Albany. It is undisputed that in 1916 Dr. Charles Winne opened a medical office on the first floor of the building and moved into one of two apartments on the second floor. The building continued to be used as a medical office and two apartments until December, 1980. In 1924, the city adopted its first zoning ordinance, and in 1968 it adopted a second ordinance. Both zoned the Center Square area as "multi-family residential". In November, 1980, respondent Meyers purchased the building and leased the first floor

to the State Communities Aid Association (SCAA), a professional lobbying group, for use as a business office. Petitioner Center Square Association, Inc., a not-for-profit corporation seeking to rehabilitate housing in the Center Square area, filed a complaint with the Commissioner of the Building Department of the City of Albany, requesting that the proposed use by SCAA be restrained as not authorized by the zoning ordinance. The commissioner denied this request, stating that the use of the first floor as a business office was a continuation of a nonconforming use, with "no qualitative change * * * in terms of volume, density, appearance or structure". Thereafter, petitioners Center Square Association, Inc., and various Center Square area residents appealed to the board of building and zoning appeals. Following a hearing, the board denied petitioners' application, concluding that a lawful nonconforming use of the building for office purposes existed at the time of enactment of the 1924 Zoning Ordinance, continued to the present time, and included the intended operation by SCAA. Petitioners then commenced this article 78 proceeding to annul the board's determination. Special Term dismissed the petition, and this appeal followed. Petitioners first contend that under the 1924 zoning ordinance, use of the first floor of the building as a medical office was not a nonconforming use, but was lawful as a "home occupation". The 1924 zoning ordinance permitted the office of a physician in a residential zone when the office was "situated in the same dwelling or apartment used by such physician * * * as his private dwelling" (former Zoning Ordinance, City of Albany, p 292). Petitioners contend that Dr. Winne's use of the building fit this description because at the time the 1924 ordinance was enacted, he maintained a medical office on the first floor of the building and resided in an upstairs apartment. Moreover, he was the only physician listed for the premises until 1935, at which time other physicians also began to be listed at that address. Respondents argue, however, that Dr. Winne's use of the building was not consistent with the definition of "home occupation". They note that at all times between 1916 and 1924 there were two apartments in the building, with Dr. Winne living in only one and various other people residing in the second. Furthermore, there is evidence in the record that prior to 1924 Dr. Winne had several other physicians in his office. They were not listed in the city directory, apparently because they were working for Dr. Winne. An interpretation of "home occupation" by the board, the local agency responsible for the administration of the zoning ordinance, must be upheld if it is neither irrational nor unreasonable (*Matter of Albert v Board of Stds. & Appeals of City of N. Y.*, 89 AD2d 960, 962). We cannot say that it was irrational to find that a building which contains two apartments and an office employing several physicians is a more extensive operation than the zoning board intended to be included in its definition of "home occupation". Thus, the board's finding that, at the time the 1924 ordinance was enacted, the medical office was a lawful nonconforming use must be sustained. Petitioners next contend that allowing a lobbying group to use the office in 1980 was not a continuation of a lawful nonconforming use, but, instead, an improper substitution of one nonconforming use for another. There is clearly a public policy to restrict nonconforming uses in order ultimately to eliminate them (*Matter of Cave v Zoning Bd. of Appeals of Vil. of Fredonia,* 49 AD2d 228, 233, mot for lv to app den 38 NY2d 710). Therefore, while an established lawful nonconforming use may be continued, it may not be exchanged for a different nonconforming use (1 Anderson, New York Zoning Law and Practice [2d ed, § 6:21, p 202; *Matter of Calcagni Constr. Co. v Zoning Bd. of Appeals of Town & Vil. of Harrison,* 56 AD2d 845). Determining whether a particular use is a continuation of or a change in a nonconforming use is a factual determination for the board in each case (see 4 Rathkopf, Law of Zoning and Planning [4th ed], pp 58-18 — 58-24). A continuation of use exists where the use is "substantially the

same" as that which previously existed (*id.*, at p 58-18); where the "essential character" of the use has not been changed (*YM & YWHA of Mid-Westchester v Town of Eastchester,* 201 NYS2d 622). Thus, for example, a continuation was found where use of a clubhouse by a veterans organization was changed to use by a youth organization (*id.*); where a convalescent home and school for cardiac children was changed to a school for mentally retarded children (*Rogers v Association for Help of Retarded Children,* 308 NY 126); and where the form of entertainment offered at a bar was changed from a rock band to "dancing girls" (*Incorporated Vil. of Williston Park v 280 Hillside Ave. Rest. Corp.,* 55 AD2d 927, mot for lv to app granted in part, dsmd in part 41 NY2d 901). In contrast to the above cases, an impermissible change in nonconforming use was found to have occurred where there was a "qualitative change" in use (*Gilmore v Beyer,* 46 AD2d 208, 210). Such an illegal change was found, for example, where an eight-truck milk hauling business was changed to a 20-truck general trucking business (*id.*); where a storage and service station for construction equipment was remodeled to become an automobile service station (*Matter of Calcagni Constr. Corp. v Zoning Bd. of Appeals of Town & Vil. of Harrison,* 56 AD2d 845, *supra*); and where a monument and stone cutting business was remodeled through the addition of gasoline pumps, garage and service building to become a gasoline service station (*Matter of Kaltenbach v Board of Stds. & Appeals of City of N. Y.,* 274 NY 34). The instant case is much closer to *YM & YWHA of Mid-Westchester, Rogers,* and *Incorporated Vil. of Williston Park* than to *Gilmore, Matter of Calcagni Constr. Corp.* and *Matter of Kaltenbach.* Here, no restoration or repairs are involved; there is no change in the building's appearance or structure as a result of the change from a medical to a lobbying office. Nor will there be any increase in occupants or clientele, thereby to affect the character of the neighborhood. Even though the board equally reasonably could have arrived at a contrary conclusion, its determination that the proposed use by SCAA is substantially the same as the prior medical office use is not irrational and is supported by substantial evidence in the record. Accordingly, its determination was properly upheld. Judgment affirmed, without costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.