■ In the Matter of GLORIA CASTORE, Respondent, v STANLEY BREITE et al., Constituting the Board of Zoning Appeals of the Town of Rochester, Appellants, and MARK SCHWARTZ et al., Intervenors-Appellants.—Levine, J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered October 19, 1989 in Ulster County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Zoning Board of Appeals of the Town of Rochester ruling that winterization of petitioner's property required a special use permit or variance.

Petitioner purchased a 1.7-acre parcel of land in the Town of Rochester, Ulster County, in 1988. At the time of acquisition, the property contained 10 buildings, seven of which were seasonal cottages and three of which were year-round dwellings. The uncontested proof was that for some 40 years, the property was used as a bungalow colony for summer vacationers. However, between 1976 and 1980, petitioner's predecessors in interest converted three of the buildings to all-season use and, from time to time, rented them to year-round tenants.

The record also establishes that the town adopted its first zoning ordinance in 1971 (hereinafter the 1971 Zoning Ordinance) and, under that ordinance as it existed prior to the conversion of the units at issue, the property was zoned R-1, permitting only one residential building per acre. However, the 1971 Zoning Ordinance also provided that a bungalow colony was a conditional use in an R-1 district upon the issuance of a special use permit from the Town Zoning Board of Appeals (hereinafter the Board). The 1971 Zoning Ordinance defined a bungalow colony as "[a] group of two or more dwelling structures on a single premises designed for seasonal occupancy and *not more than one of which* is used for the purpose of all-year-round residence" (emphasis supplied). The foregoing definition of a bungalow colony was incorporated in a new town zoning ordinance in 1983, under which winterization of a bungalow was expressly designated as a change of use requiring a special use permit.

Once petitioner acquired the property, she made renovations and then rented the winterized units to year-round tenants and their families. Intervenors, who were adjoining landowners, took a timely appeal to the Board from a prior ruling of the Town's code enforcement officer that the three all-season units were a valid continuation of a preexisting nonconforming use as a bungalow colony and that such use had not been abandoned. After a hearing, the Board agreed that there had not been an abandonment of the nonconforming use for the requisite statutory period. It further ruled, *inter alia,* however, that the conversion of three buildings to year-round residences after the 1971 Zoning Ordinance became effective was an invalid change from the nonconforming use as a bungalow colony.

Petitioner then brought this CPLR article 78 proceeding to challenge the determination. Supreme Court annulled the Board's determination, holding that the conversion of the seasonal bungalows to year-round residences did not change the essential character of the prior nonconforming use, but merely increased the volume or the frequency of that use. Therefore, the court ruled, the year-round use was a valid continuation of the preexisting nonconforming use. This appeal followed.

There should be a reversal. Since no special use permit had ever been obtained for the operation of the bungalow colony as an exception to the building/lot density limits in an R-1 zone under the 1971 Zoning Ordinance, maintenance of a bungalow colony by petitioner's predecessors in interest was

only legal as a preexisting nonconforming use *(see, Town of Oyster Bay v Avalon Yacht & Cabana Club,* 38 AD2d 604, 605). Undeniably, winterizing the bungalows and then renting them for full-time, rather than seasonal, occupancy represented *some* change in use. As the Board pointed out in its decision, under section VI-E of the 1971 Zoning Ordinance a change in a nonconforming use was only valid if it "is of the same or *more* restricted in nature" (emphasis supplied). That section further provided that "[u]ses shall be deemed more restricted or less restricted in accordance with Section III-A and Section XI". Under section III-A of the 1971 Zoning Ordinance, as previously noted, only a single, one-family dwelling per acre was permitted as of right in an R-1 zone; a bungalow colony with a maximum of one year-round residence was only permissible by special use permit. The Board could, thus, reasonably interpret the express language of the foregoing provisions to the effect that converting three buildings to all-year residences on the 1.7-acre plot was a more expansive, i.e., less restricted, use than had been previously permitted under the nonconforming use as a pure bungalow colony *(see, Matter of Gaona v Town of Huntington Zoning Bd. of Appeals,* 106 AD2d 638, 640). The distinction expressly drawn in the 1971 Zoning Ordinance between seasonal bungalow colonies and all-year residences renders inapposite *Matter of Allen v Hattrick* (87 AD2d 575), the case principally relied upon by Supreme Court in holding that the conversion did not expand the nonconforming use. The court in *Matter of Allen* expressly stated "[w]e note only that [the applicable zoning ordinance] did not make any distinction between * * * seasonal and year-round occupancy of accessory dwellings or main dwellings" *(supra,* at 575-576).

It follows from the foregoing that it was entirely rational for the Board to conclude that, under the terms of the 1971 Zoning Ordinance and the facts established by the record, the conversion of the additional units to all-year residences was an invalid expansion of a preexisting nonconforming use *(see, Matter of Rosbar Co. v Board of Appeals,* 77 AD2d 568, 569, *affd* 53 NY2d 623; *Town of Oyster Bay v Avalon Yacht & Cabana Club, supra,* at 605). The Board's interpretation of the provisions of the 1971 Zoning Ordinance was also consistent with the judicial policy of restrictive application of nonconforming use provisions in zoning ordinances so as to lead to the eventual elimination of such nonconforming uses *(see, Matter of Harbison v City of Buffalo,* 4 NY2d 553, 559-560; *Matter of Aboud v Wallace,* 94 AD2d 874, 875). Nor do we find

any factual basis in the record from which an estoppel against a municipality could be established by reason of any rulings or representations of the Town's code enforcement officer *(see, Matter of Rosbar Co. v Board of Appeals, supra,* at 625).

Judgment reversed, on the law, without costs, determination confirmed and petition dismissed. Mahoney, P. J., Casey, Weiss, Levine and Mercure, JJ., concur.