GEORGE MUNRO, Respondent, *v.* FRANK TOUSEY, Appellant.

*It seems*, that an imitation of the names, signs or marks under which another conducts a business is a deception practiced upon the public and an injury to the proprietor in the loss of custom and patronage, to redress which the jurisdiction of a court of equity may be invoked.

This rule applies to the publication of books under a particular name; this is the subject of property, and a colorable imitation of the name adopted by one publisher by another engaged in publishing similar books, by which the public may be easily misled into supposing it is the literary article they desired to obtain and read, is an act of deception which injures the publisher who first adopted the name, and which he may call upon a court of equity to redress.

This power, however, is only to be exercised to prevent fraud and imposition, and to justify the interference of the court there must be some real resemblance in the name and appearance of the publication, such as to deceive a person of ordinary intelligence and prevent him in the ordinary and natural use of his senses from ascertaining the difference.

Plaintiff was the publisher of a series of detective stories; to designate the series, he had adopted the name of the "Old Sleuth Library," and "Old Sleuth, the Detective," was designated as their author. Defendant published a series of similar stories which he named the "New York Detective Library." This series contained publications by titles, some of which contained the words "Young Sleuth," others "Sleuth." There was a marked difference in the illustrations upon the covers of the two series. *Held*, that an action was not maintainable to restrain defendant from so using the word "Sleuth" in connection with his publication; that the pseudonym "Old Sleuth" was plaintiff's property; but he had no such property rights in the word "Sleuth" as would justify the interference of the court in preventing its use by defendant, in the absence of proof of similarity in the publications, or of other facts tending to show an intent on his part to mislead purchasers.

(Argued October 13, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 6, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William H. Townley* for appellant. To entitle one to an injunction, there must be such a similarity of designation on the part of defendant as would be likely to mislead purchasers. (Browne on Trade-marks, § 547; *Snowden* v. *Noah*, Hopk. Ch. 396; *Bell* v. *Lock*, 8 Paige, 74; *Talcott* v. *Moore*, 6 Hun, 106; *Hier* v. *Abrahams*, 82 N. Y. 519.) *Laches* on the part of the plaintiff is clearly shown in this case. (*Caswell* v. *Davis*, 58 N. Y. 223; *Amoskeag Co.* v. *Garner*, 55 Barb. 151 · Browne on Trade-marks, §§ 497, 503–505, 547.)

*Roger Foster* for respondent. Plaintiff was entitled to the injunction granted. (*A. F. P. M. Co.* v. *C. S. Co.*, 35 Fed. Rep. 396; *C. M. Co.* v. *C. M. Co.*, 32 id. 94; *A. G. P. Co.* v. *G. P. Co.*, 25 Hun, 398; *Mack* v. *Petter*, L. R. [14 Eq. Div.] 431; *Guinness* v. *Ullmer*, 10 L. T. 127; *Dickens* v. *Lee*, 8 Jurist. 183.) The delay in beginning the suit did not deprive plaintiff of the right to an injunction and an accounting. (*N. Y. R. Co.* v. *Rothery*, 107 N. Y. 310; *Platt* v. *Platt*, 58 id. 646; Code Civ. Pro. § 388; *Derby* v. *Yale*, 13 Hun, 273; *Hogg* v. *Scott*, L. R. [8 Eq. Div.] 444; *Taylor* v. *Carpenter*, 3 Story, 458; *A. M. Co.* v. *Spear*, 2 Sandf. 599.) Tousey's insolvency and the fact that he is now working upon a salary cannot relieve him from responsibility. (*Estes* v. *Worthington*, 30 Fed. Rep. 465, 466; *Sawyer* v. *Kellogg*, 9 id. 601; *Jennings* v. *Doland*, 29 id. 861; *Maltby* v. *Bobo*, 14 Blatch. 53; *Steiger* v. *Heidelberger*, 4 Fed. Rep. 455; *Cox* v. *Hickman*, 8 H. L. Cas. 268.) The principles adopted upon the accounting were correct. (*Benkert* v. *Feder*, 34 Fed. Rep. 534.)

Gray, J. The plaintiff was the publisher of a series of pamphlet works of fiction, entitled as the "Old Sleuth Library," and in this action he has sought to restrain the defendant, who was the publisher in a like way of the "New York Detective Library," from publishing and selling any book or pamphlet containing in its title, or in any part of it, the word "Sleuth," or purporting to be by the author of any story with any such title, and to compel an accounting for all profits realized.

. The defendant's publications, which are especially aimed at by name in this action, were variously entitled as " Young Sleuth, the Detective, in Chicago," or as " Young Sleuth, the Keen Detective," or as " The Broken Button, or Young Sleuth on the Trail," and by other titles which contained the words " Young Sleuth," or " Sleuth."

The foundation for plaintiff's claim to an exclusive right to the use of the word, or name, " Sleuth," in any application of it to the title or authorship of a work of fiction, seems to consist in his having selected and made use of the name " Old Sleuth Library" to designate a series of pamphlet publications of detective stories. Previously, he had published a story called " Old Sleuth, the Detective," which proved so unusually attractive to some portion of the reading public as to cause the plaintiff to start an " Old Sleuth Library" series, and to suggest to his author that in his future contributions of detective romances to that library he should describe their authorship as being by " Old Sleuth." The plaintiff now contends that " Sleuth," as a word or name, has become his property and a trade-mark, which designates, as he puts it, " a certain kind and quality of goods, namely, books describing the detection of crimes, manufactured and sold by him," and his counsel argues that the plaintiff's title to such a trade-mark is conclusively established by the findings in the case. But, with respect to this argument of ownership, it is sufficient to say that we may not so read the findings of the learned trial judge. What he does find is that the pseudonym " Old Sleuth " was the plaintiff's property and was used by him to identify his publications. There may have been some evidence to warrant such a finding, and, in the view I take of this case, it may be assumed that it was the fact. The question, then, which we have actually presented is whether, by the appropriation and use of the name " Old Sleuth," to designate his serial publications of detective stories, the plaintiff has acquired a property right in the word " Sleuth," which the law will protect against the use of by others in entitling works of fiction. I think we cannot agree with the court below in such a view. There is no proof

to support a finding of an intention on the part of the defendant to defraud the plaintiff, or the public, except as it may be inferred by the court from the mere use of the name "Sleuth," and, as to any similarity in the pamphlet publications, in covers or pictorial illustrations, by which a purchaser might be misled, nothing in the evidence, or in a personal inspection of the exhibits, would warrant the finding that it existed. The differences, in the titles of the series in which the stories appear, and in the illustrations upon the covers, are marked.

That the plaintiff would be entitled to the protection of the law against the use by others of the words "Old Sleuth Library," as used to describe a series of publications, or against the use of the name "Old Sleuth, the Detective" for a work of fiction, may be conceded. That is plainly right and, in order to afford a protection more adequate than would be afforded by an action at law, the equity power of the courts might be successfully invoked to restrain a similar use by others of such names and to prevent a species of literary piracy. This power is exerted upon the same principle upon which the court acts in trademark cases, in restraining the unauthorized use of the label, or sign, constituting the trade-mark. The theory upon which a court of equity has long acted is that a resemblance in, or an imitation of the names, signs, or marks, under which another conducts a business, is a deception practiced upon the public and an injury to the proprietor, in the loss of custom and patronage; to redress which an action at law for damages is not a sufficiently satisfactory remedy. That is the principle we may extract from the often cited opinions of Lord ELDON in *Hogg* v. *Kirby* (8 Vesey, 215); of Lord LANGDALE in *Knott* v. *Morgan* (2 Keen, 213), and of our own chancellors, in the early cases of *Snowden* v. *Noah* (Hopkin's Ch. 347) and of *Bell* v. *Locke* (8 Paige, 75). A publication is the subject of property and there is no reason why, like every other kind of property, it should not be the subject of the law's protection. To put out a colorable imitation of it, by which the public may be easily misled into supposing that it is the literary article they

had in mind to obtain and read, is an act of deception, which injures the publisher.

In *Snowden* v. *Noah* (*supra*), Chancellor Walworth said of the injury to the right of a publisher of books by acts of deception and piracy, that, like that which is done to the good will of an established trade, or to the custom of an inn, " the injury, for which redress is given in such cases, results from the imposture practiced upon the customers of an existing establishment or upon the public." So that, if there was such a simulation of the plaintiff's publications for the fraudulent purpose of imposing upon the reading public, a court of equity would protect him against the continuance of such encroachment upon his rights. But the difficulty in the way of the plaintiff's case is that there is no such resemblance between the defendant's publications and those of the plaintiff, as to prevent the ordinary and natural use of one's senses in ascertaining the difference before buying. And unless that actually exists, in a similarity in their caption and appearance, there is no just reason for the interference of equity.

The difference in the caption of the story, as well as the difference in the name of the series and in the illustration upon the covers, should indicate to the most ordinary intelligence that the defendant's publications were not of tales of " Old Sleuth the Detective," or parts of the " Old Sleuth Library." No admirer of that hero of fiction, and a follower of those serial publications, could be misled, when buying numbers of the defendant's " New York Detective Library," containing tales of " Young Sleuth, the Detective, in Chicago," or of " Phœbe Paullin's Fate, or Tracked by Young Sleuth," or any others of those named. If the character and prowess of Old Sleuth have captivated the literary fancy of a portion of the public and a magic in the name secures the public patronage to the " Old Sleuth Library," how can it be imposed upon by the caption of stories of " Young Sleuth," or of " The Broken Button, or Young Sleuth on the Trail?" And the illustrations of Young Sleuth and of his rescued subjects convey no idea of Old Sleuth. Both to the eye and to the ear the differ-

ences are marked. The youth of the detective hero in the defendant's tales, as indicated in the title, sufficiently warns an intending purchaser that the original Old Sleuth is not the subject of the author's imagination. If he deems Mr. Munro's "Old Sleuth Library" more reliable, as a depository of exciting detective tales, why or how should he select from Mr. Tousey's "New York Detective Library?" However attractive the captions of the tales published by Mr. Tousey, neither they, nor the illustrations designed to fasten the public eye, can fairly be said so to resemble the plaintiff's series or titles as to amount to an imposture upon the reading public.

That is what the question is here ; as it is in every case where it is sought to restrain the prosecution of a business charged with being an encroachment upon the complainant's property rights. A court of equity should proceed in the exercise of its power with a wise and judicial discretion. In cases such as this it should presume that the public makes use of the senses of sight and hearing, and that it is possessed of a sufficient amount of intelligence to note the difference the senses convey. The court ought not to interfere with the freedom of conduct of trade and with general business competition. Its power to restrain should be reserved to prevent fraud and imposture from some real resemblance in the name and appearance of the publications.

I think the judgments of the Special and General Terms should be reversed and, as a new trial would be useless, judgment should be ordered for the defendant dismissing the complaint, with costs in all the courts.

All concur, except RUGER, Ch. J., not voting.

Judgment accordingly.