POCKET BOOKS, INC., Respondent, v. JOSEPH MEYERS et al., Doing Business under the Firm Name of AVON POCKET-SIZE BOOKS, et al., Appellants.

Reargued November 29, 1943; decided January 20, 1944.

Joseph M. Proskauer, J. Alvin Van Bergh and Louis P. Eisner for appellants. An injunction was improperly granted. (Atlas Mfg. Co. v. Street & Smith, 204 F. 398; Kipling v. Putnam's Sons, 120 F. 631; Merriam v. Famous Shoe & Clothing Co., 47 F. 411; Merriam v. Texas Siftings Pub. Co., 49 F. 944; Merriam Co. v. Syndicate Pub. Co., 207 F. 515, 237 U. S. 618; Hebrew Pub. Co. v. Scharfstein, 288 N. Y. 374; Gotham Music Service v. D. & H. Music Pub. Co., 259 N. Y. 86; Diamond Expansion Bolt Co. v. U. S. Expansion Bolt Co., 177 App. Div. 554; Street & Smith Pub. Inc., v. Phantom Detective, Inc., 148 Misc. 897; McGraw-Hill Pub. Co. v. American Aviation Associates, Inc., 117 F. 2d 293; Oxford Book Co. v. College Entrance Book Co., 98 F. 2d 688; Munro v. Tousey, 129 N. Y. 38; Stokes v. Allen, 56 Hun 526.)

Harold R. Medina, Douglas M. Black, Edward K. Hanlon and John W. Jordan for respondent. All of the essential

elements, requisite to the granting of injunctive relief, were proven. (*Fisher* v. *Star Co.*, 231 N. Y. 414; *Fischer* v. *Blank*, 138 N. Y. 244; *Day* v. *Webster*, 23 App. Div. 601; *Eastern Constr. Co.* v. *Eastern Engineering Co.*, 246 N. Y. 459; *Hebrew Pub. Co.* v. *Scharfstein*, 288 N. Y. 374; *Mainzer, Inc.*, v. *Gruberth*, 237 App. Div. 89, 262 N. Y. 484; *Brillo Mfg. Co.* v. *Levine*, 236 App. Div. 488; *Long's Hat Stores Corp.* v *.Long's Clothes, Inc.*, 224 App. Div. 497; *Burrow* v. *Marceau*, 124 App. Div. 665; *Reckitt & Sons* v. *Kellogg*, 28 App. Div. 111.)

LEWIS, J. The plaintiff seeks injunctive relief to restrain alleged unfair competition by the defendants.

Since 1939 the plaintiff has published and sold more than 16,000,000 unabridged reprints of a wide variety of literary works. It ascribes its success to the peculiar styling or format of its reprints, their convenient pocket size, their low purchase price of twenty-five cents per copy, and other features which have met with favor from the buying public. The grievance now asserted by the plaintiff is that the defendants, in alleged disregard of the plaintiff's rights and in an effort to induce the public to purchase reprints published by them in place of those published by the plaintiff, and with intent deceptively to palm off their books upon the purchasing public as and for the plaintiff's books, have published and sold reprints which simulate the plaintiff's books. The plaintiff charges that the defendants' acts amount to unfair competition.

In the circumstances shown by this record does the alleged simulation of which the plaintiff complains constitute actionable wrong by the defendants which warrants injunctive relief?

That question was resolved in favor of the defendants at Special Term where the plaintiff's complaint was dismissed on the merits. At the Appellate Division the judgment was reversed on the law and facts, one justice dissenting, and certain findings of fact and conclusions of law made by Special Term were reversed and new findings made.

The judgment of reversal by the Appellate Division contained the following injunctive provisions: "It is further hereby Ordered and Adjudged that the defendants and their officers, employees and agents be and they hereby are restrained forever from directly or indirectly manufacturing, publishing,

handling, distributing, selling or offering or advertising for sale, any books measuring approximately 6½ x 4 5/16 inches, and being so compact in size as to fit into the pocket of a coat or into a woman's pocketbook, which have on the front cover the words ' Pocket ' or ' Pocket Book ' or ' Pocket Books ' alone or in combination with any other word or words, and which combine all or any number of the following elements: Lamination of cover, coloring of edges in reddish or any kindred tinge, printing a bleed border on the back cover in yellow, orange or any kindred tinge, and from publishing or selling any books of approximately such size without prominently displaying on the front cover thereof the words ' An Avon Book ' or ' Avon Book Co.', or ' Avon Book ', or ' Avon '; * * *.''

We agree with that portion of the opinion *Per Curiam* by the Appellate Division (265 App. Div. 17) which expresses the view that the plaintiff can claim no copyright or monopoly with respect to the use of the word '' pocket '' when used descriptively; nor to the size, coloring, lamination of cover, '' bleed '' border, or other elements which as a whole constitute the format of its reprints. We are also in accord with the statement that imitation in manufacture of any one of those elements, standing alone, would not afford adequate grounds for injunctive relief. But in stating the basis for the judgment which we now review the opinion continues — '' * * * when all, or a number of these elements are so combined by the imitator that the casual intending purchaser is likely to be deceived and led to believe the goods are those of the plaintiff, to plaintiff's damage, it is within the province of equity to interfere.'' (265 App. Div. 17, 18.)

There can be no doubt that even though there may be an absolute right in the defendants to use the several elements employed by the plaintiff to produce its format, the defendants have no right to engage in the deception of passing off their own product for that of the plaintiff. In the present case, however, where we may review the facts found by the Appellate Division (State Const., art. 6, § 7; Civ. Prac. Act, § 605; *Harrington* v. *Harrington*, 290 N. Y. 126, 130), we think the weight of evidence establishes that the defendants exercised reasonable care to avoid such deception and to inform the public of the source of the twelve reprints they have published and offered for sale.

The legend " AVON pocket-size BOOKS ", printed in bold black type on a light field, appears in several places on the cover of each reprint published by the defendants. It is displayed on the " back bone " or binding edge of the book, in some instances on the front cover and in each instance on the back cover. It appears also on the title page of each book and repeatedly on pages within the cover which carry advertising matter designed to promote the sale of the defendants' reprints. In addition the defendants have caused to be printed on the back cover of each reprint, immediately above the legend " AVON pocket-size BOOKS ", an oval medallion — 1¼" x 1" — which portrays a bust of Shakespeare. This medallion, which has been adopted by the defendants, as a hall-mark and has been used by them consistently to identify their product, is readily distinguished from the plaintiff's slightly smaller hall-mark — a bespectacled kangaroo reading a book — which is printed on the cover of its reprints for a like purpose.

In the absence of proof that the plaintiff has acquired the exclusive proprietary right to employ in the design of its format the descriptive word " pocket ", the coloring and lamination of the cover, the " bleed " border and the other features, including the low price, which concededly have been factors in the success of plaintiff's reprints, the defendants had the right in the publication and sale of their own reprints to use those elements, provided they adopted means adequately to identify their books and to inform the public that they were the defendants' product. Stated otherwise, by employing in the design of their own format the several features used by the plaintiff — elements which had passed into the domain of things public and which gave to the defendants' reprints an appearance similar to the plaintiff's product — fairness in competition required of the defendants that their reprints convey to the purchasing public information which identified their product and reasonably distinguished it from that of the plaintiff. (*Kellogg Co.* v. *National Biscuit Co.*, 305 U. S. 111, 118–120; *Saxlehner* v. *Wagner*, 216 U. S. 375, 380, 381; *Flagg Mfg. Co.* v. *Holway*, 178 Mass. 83, 90, 91; *Gum, Inc.*, v. *Gumakers of America, Inc.*, Circuit Court of Appeals, 3rd Circuit, decided June 30, 1943 [N. Y. L. J., 10/18/43].)

We find in the present record preponderant evidence that such identifying information was provided by the defendants by giving reasonable prominence on the cover of their reprints and elsewhere within the books to the legend " AVON pocket-size BOOKS " and to the medallion adopted by the defendants as a hall-mark. Such identifying information, we think, serves adequately to exclude belief by a literate purchaser that the reprints are those of the plaintiff.

In *Gotham Music Service, Inc.,* v. *Denton & Haskins Music Pub. Co.* (259 N. Y. 86) — where the plaintiff was denied the right to restrain the defendant from publishing an old song which the plaintiff had re-popularized after it had become *publici juris* — this court said, per POUND, Ch. J, (p. 89), " The demand is for the song and not the publisher." So in the present case — where reprints of standard literary works are the subject of competition in trade — we think the weight of evidence establishes that the demand is for the intrinsic character of the reprints denoted by the title, the text, the popularity of the author's writing, not for the producer.

We hold that the means adopted by the defendants to identify their reprints are adequate to avoid deception as to their source and enable the public to distinguish between the defendants' product and that of the plaintiff. Unfair competition has not been proven.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

RIPPEY, J. (dissenting). The evidence and findings in this case establish that plaintiff originated in 1938 a new style and format for reprints which was novel and distinctive and constituted a novel and not theretofore used combination of various features utilized in bookmaking and embodied it in publications which it designated as " Pocket Books " to be sold at a small price and of uniform and appropriate sizes to be easily carried in the ordinary coat pocket. Incorporated in the books were editorial features both novel and distinctive. Large sums of money were spent by plaintiff in sales promotion and the development of its good will and business. Success and popularity of the project were general and instantaneous and during

the following four years over sixteen million copies were sold through some sixty thousand outlets. To capitalize on and take advantage of plaintiff's good will and property, defendants deliberately, intentionally and fraudulently copied and appropriated to their own use the style and format of plaintiff's books and began to issue and sell in the fall of 1941 books which were practically indistinguishable to the ordinary buyer from plaintiff's reprints and which were designed to and did confuse and mislead the public into the belief that the books of defendant were in fact issued for sale by the plaintiff.

That the acts and practices of defendants found by the court below constitute unfair trade in business cannot be gainsaid. Not alone was there found to be deliberate misappropriation of plaintiff's good will and complete and intentional simulation and imitation of the books in size, distinctive markings and other characteristics but also open and obvious fraud and false pretense.

It is the province of courts of equity to intervene to prevent such acts and practices (*Fischer* v. *Blank,* 138 N. Y. 244). Courts of equity do not wink at efforts of an imitator to carry out such a dishonest plan. " * * * the right to acquire property by honest labor or the conduct of a lawful business is as much entitled to protection as the right to guard property already acquired. * * * It is this right that furnishes the basis of the jurisdiction in the ordinary case of unfair competition " (*International News Service* v. *Associated Press,* 248 U. S. 215, 236). " The theory upon which a court of equity has long acted is that a resemblance in, or an imitation of the names, signs, or marks, under which another conducts a business, is a deception practiced upon the public and an injury to the proprietor, in the loss of custom and patronage; to redress which an action at law for damages is not a sufficiently satisfactory remedy. * * * A publication is the subject of property and there is no reason why, like every other kind of property, it should not be the subject of the law's protection. To put out a colorable imitation of it, by which the public may be easily misled into supposing that it is the literary article they had in mind to obtain and read, is an act of deception, which injures the publisher." (*Munro* v. *Tousey,* 129 N. Y. 38, 41). The test in actions to restrain unfair competition in business is whether the acts

complained of are fair or unfair. " No person should be permitted to pass off as his own the thoughts and works of another." (*Fisher* v. *Star Co.*, 231 N. Y. 414, 427, 433).

The right to relief in each case depends on its own peculiar facts. The test of unfair competition in a case like this is not found in elaborate descriptions of points of difference discoverable after careful comparison between the competing articles but rather in the resemblance which will deceive the average buyer into believing without elaborate comparison that the simulated article is the original which the buyer has in mind. I am not prepared to subscribe to the proposition that equity will not interfere to prevent such an obvious, deliberate and undeniable species of fraud and deception as is established in this case by the findings of the court below.

The judgment appealed from should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, DESMOND and THACHER, JJ., concur with LEWIS, J.; RIPPEY, J., dissents in opinion in which CONWAY, J., concurs.

Judgment accordingly.