DELL PUBLISHING COMPANY, INC., Respondent, v. STANLEY PUBLICATIONS, INC., Appellant.

First Department, June 28, 1960.

*Benjamin E. Winston* of counsel (*Eli D. Schoenfield* with him on the brief; *Benjamin E. Winston,* attorney), for appellant.

*Milton Handler* of counsel (*Sidney A. Diamond* and *Cecelia H. Goetz* with him on the brief; *Kaye, Scholer, Fierman, Hays & Handler,* attorneys), for respondent.

VALENTE, J. Defendant appeals from a judgment enjoining it from using the word "Modern" in the title of a magazine "Modern Confessions", published by defendant in the "romance" or "confession" field. The judgment is predicated on the conclusion that the defendant's use of the title "Modern Confessions" constitutes unfair competition.

Plaintiff is engaged in the publication of magazines, comic books, children's books and paper-back books, and has published its magazine "Modern Romances" since 1930. The title "Modern Romances" was registered in the United States Patent Office and plaintiff claimed that the widespread use and exploitation of the title had given it a secondary meaning identifying it as plaintiff's magazine. The circulation of "Modern Romances" has been approximately 1,000,000 copies monthly

for the past 15 years, and its advertising revenue currently exceeds $800,000 annually.

"Modern Romances" is one of a family of magazines published by plaintiff and, together with "Modern Screen" and "Screen Stories", this group has been offered as a unit to advertisers as the "Dell Modern Group." Each of the covers of these three magazines (and many other magazines published by plaintiff) carries in the upper left-hand corner the distinctive and conspicuously placed "DELL" insignia or symbol, consisting of the letters DELL in a contrastingly colored box.

Defendant has published magazines since 1950, including "Real Men" and "Real Secrets". Late in 1957, it decided to publish another magazine of the general type as "Real Secrets". When it found the title "Real Confessions" was unavailable, it chose "Modern Confessions" instead. In January, 1958, plaintiff objected to defendant's proposed use of the title "Modern Confessions" but defendant rejected the protest and published the first issue of "Modern Confessions" under an April, 1958 cover date. Before the commencement of this suit, defendant had published six issues of the magazine with an average net paid circulation of 130,000 copies per month.

Special Term found that "romances" and "confessions" are synonymous in magazine publishing, that defendant utilizes the same distribution media and aims at the same market as plaintiff, and that there is a similarity of make-up, of style and of covers in the magazines, all of which tend to cause confusion which may mislead purchasers.

It seems undisputed that all so-called "romance" and "confession" magazines, which cater primarily to the distaff side, share common characteristics. Most contain in their title a word such as "romance", "confession", "secrets" or "experience." The stories — which purport to be true — are actually fictional, are told in the first person, and deal with lurid accounts of sins, aberrations, mistakes, illicit loves, and marital infidelities. The covers of such magazines almost invariably feature the photographs or portraits of young and pretty girls as well as "blurb" lines headlining the stories inside.

Commencing then with the uncontroverted fact that the general content of plaintiff's and defendant's magazines is substantially similar and aimed at the same consumer market, and ultimately distributed through the same retail outlets, the real question is whether the use of the word "Modern" on defendant's magazine would tend to cause such confusion in the purchaser as to amount to unfair competition. In *Munro* v. *Tousey* (129 N. Y. 38, 43) the court said: "A court of equity should

proceed in the exercise of its power with a wise and judicial discretion. In cases such as this it should presume that the public makes use of the senses of sight and hearing, and that it is possessed of a sufficient amount of intelligence to note the difference the senses convey. The court ought not to interfere with the freedom of conduct of trade and with general business competition. Its power to restrain should be reserved to prevent fraud and imposture from some real resemblance in the name and appearance of the publications.'' The test is whether the resemblances between the two magazines are calculated to produce confusion as to their respective identities. (*Eastern Constr. Co.* v. *Eastern Eng. Corp.,* 246 N. Y. 459, 464; see, also, *Pocket Books* v. *Meyers,* 292 N. Y. 58.)

In our view, the evidence does not warrant a finding of a reasonable tendency to cause confusion. Defendant's magazine is clearly distinguishable from plaintiff's, and cannot reasonably be mistaken for it. Primarily, the logotype of '' Modern Confessions '' in no way resembles that of '' Modern Romances.'' Even a cursory examination of the exhibits shows that the two words of plaintiff's title are printed on the cover of plaintiff's magazine in letters of equal size, and on a single line. The words in defendant's title, however, are in italics, and the emphasis is on the word '' confessions.'' '' Modern '' is in lower case type, and is located *above* the word '' Confessions ''— which extends entirely across the cover.

Moreover, plaintiff's magazine has the name DELL printed in the upper left-hand corner. Another aspect of difference is the nature of the banner headlines on the respective magazines for the past five months. It is apparent that plaintiff in the form of its cover is seeking to broaden its reader base by appealing not just to the '' confession '' market, but to the general women's magazine market with such titles as: '' Complete in this Issue: Chicken Cook Book ''; '' There is a Perfect Hairdo For you on page 97 ''; '' Save $20 on 20 Dinners '', etc. On the other hand, defendant's magazine makes no pretense at merchandizing anything but so-called '' confessions ''; with the upper headlines of its last five issues blazoning such titles as: '' Invitation to Sex? ''; '' Why Shouldn't He Wait For Me ''; '' Teen Girl on Sin Street ''; and '' Afraid to Trust My Heart.''

Hence one need only pick up copies of the plaintiff's and defendant's magazines to see that their covers, their contents and even the texture of their paper are significantly different. The similarities are only those inherent in the nature of the product. There has been no adequate showing of copying or of intent to mislead plaintiff's customers, or proof of any palming

off. The public can readily distinguish the two products. Though similarity in the name " Modern " exists, that similarity must be considered with the marked differences in the products noted above, and upon such consideration there is no justification for equitable interference in this field of publications.

One more matter deserves mention. Plaintiff contends that its registration of " Modern Romances " as a trade-mark in the United States Patent Office entitles it to an injunction against defendant's alleged infringement. It is apparent that the decision of Special Term rested on a finding of unfair competition, and not on trade-mark infringement, although a likelihood of confusion would be relevant as to both claims (see *Taendsticksfabriks Akticbolagat Vulcan* v. *Myers,* 139 N. Y. 364, 367; *Famous Sea Food House* v. *Skouras,* 272 App. Div. 258, 260–261; *Admiral Corp.* v. *Penco, Inc.,* 203 F. 2d 517, 520). As already indicated, the record does not support a conclusion of a reasonable likelihood of confusion. And in our view the word " modern " as used in magazines in the romance-confession field, is not a nondescriptive term which had acquired a secondary meaning to be protected by a court of equity. In the absence of proof of imitation and confusion, defendant was free to select the word " modern " to be used in conjunction with " confessions " for a title, particularly in view of the proof that the word " modern " was used by many other publishers. The concurrent use of common words by the leading magazines in the romance-confessions field by various publishers is further support for our conclusion that there was no infringement here, no palming off, and no reasonable likelihood of confusion. Obviously from the nature of the product in this romance-confession field, all competitors have similar names and similar products. Competition should not be stifled to give any one publisher a monopoly. Only unfair competition will be enjoined; and the record here will not support a judgment based on that ground.

The judgment should be reversed, and the complaint dismissed, with costs.

McNALLY, J. (dissenting). Plaintiff has been awarded judgment restraining defendant from using the word " Modern " in conjunction with the word " Confessions " in publishing, distributing, selling and offering for sale or advertising the magazine entitled " Modern Confessions ". The complaint is grounded on infringement of trade-mark and unfair competition.

Plaintiff is engaged in the business of publishing and selling magazines and books throughout the United States and in various foreign countries. Among the magazines published and sold

by plaintiff is the "Dell Modern Group" consisting of the magazines entitled "Modern Romances", "Modern Screen" and "Screen Stories". It should be noted in the magazine industry romance and confession literature are synonymous and pertain to fictional romantic stories with the common theme of sin, suffer and repent.

Plaintiff initially published "Modern Romances" in October, 1930 and has continued so to do monthly. "Modern Romances" was copyrighted in February, 1931. Prior to the trial 340 monthly issues of the magazine had been published. It is distributed throughout the United States, Canada and foreign countries largely through 800 independent wholesalers. A small percentage of each issue is distributed directly to large chain stores. The retail outlets are drugstores, stationery stores, newsstands, supermarkets, terminals and to a minor extent subscribers. The magazine retails at 25 cents per copy.

Since 1943 the monthly circulation of "Modern Romances" has been approximately 1,000,000. It has been continuously and extensively advertised through the mediums of radio, television, newspapers, magazines, brochures, posters, mail and otherwise. Between 1937 and 1958 the sum of $1,140,000 was expended in publicizing and advertising the magazine. Since 1930 and until the publication of defendant's magazine entitled "Modern Confessions", plaintiff's "Modern Romances" was the only magazine incorporating the word "Modern" in its title, which concerned itself largely with the subject of romance or confession literature as here defined.

Since 1940 plaintiff's policy has been to make the three magazines comprising the "Dell Modern Group" available to advertisers as a single unit. Between 1937 and 1958 $2,320,000 was expended to advertise the three magazines comprising the "Dell Modern Group". The annual advertising revenue of the group ranges between $1,500,000 to $2,700,000.

Plaintiff also publishes and distributes without charge in order to stimulate advertising in its modern group of magazines a magazine entitled "Modern Supermarkets", which is published and distributed bimonthly to about 2,500 executives, managers and buyers and which promotes the products of advertisers utilizing the modern group and suggests the various advantages of advertising therein.

Defendant first published its magazine "Modern Confessions" during January, 1958. Prior thereto it had published about three issues of the magazine entitled "Real Secrets". After "Modern Confessions" was published, defendant alternately and bimonthly published each of the magazines. At the

time of the trial apparently "Real Secrets" had been dropped but the testimony was that it was defendant's intention to resume its publication. Both magazines of defendant are of the romance or confession type, like the plaintiff's "Modern Romances".

Plaintiff's title "Modern Romances" is uniformly printed near the top of the magazine cover. In bold type on a single line both words of the title enjoy equal prominence. Invariably plaintiff's magazine is imprinted with the name "Dell", which is about one third the size of the lower-case lettering of its title. The title "Modern Confessions" of defendant's magazine also appears near the top of its cover. The word "Modern" is on the first line and the word "Confessions" on the second line. The type of the word "Modern" is a little more than one half the size of the lower-case lettering of the word "Confessions". There is nothing on defendant's magazine cover to indicate affirmatively that it is not a "Dell" publication.

Defendant's executive editor testified that its purpose in including the word "Modern" in the title of its magazine is to distinguish it "from the bulk of the confession magazines on the newsstands". It is undisputed that the existence, widespread circulation and prominence in the romance and confession field of plaintiff's "Modern Romances" was known to the defendant prior to and at the time it selected the title of "Modern Confessions" for publication.

On January 28, 1932 plaintiff's predecessor registered "Modern Romances" under the Trade-Mark Act of 1905 in the United States Patent Office under registration number 295391. The said trade-mark was also registered under the Trade-Mark Act of 1946 in the said office on January 19, 1954 under registration number 584902. The last registration was in the category of a principal register and was made in accordance with section 2 of the Lanham Act of July 5, 1946 (U. S. Code, tit. 15, § 1051 et seq.). Subdivision (f) of section 2 of the act provides for registration of a mark which has become distinctive of the applicant's goods, although the mark is descriptive and provides that proof of exclusive and continuous use for the preceding five years may be accepted by the Commissioner of Patents as prima facie evidence that the mark has become distinctive.

On this record, assuming the plaintiff's trade-mark to be descriptive, the evidence is overwhelming that plaintiff's trade-mark, as applied to its magazine concerned with the publication of romantic and confession literature of the type contained in the magazines here involved, from the five years next preceding the registration of January 19, 1954, was exclusively and con-

tinuously so used by the plaintiff and became distinctive of the plaintiff's said magazine in that field.

Subdivision (b) of section 7 of the Lanham Act (U. S. Code, tit. 15, § 1057, subd. [b]) provides that a registration of a trademark upon the principal register is prima facie evidence of validity, ownership and of the registrant's exclusive right to use it. Moreover, the act provides (U. S. Code, tit. 15, § 1072) that such registration is constructive notice of the registrant's claim of ownership.

Defendant has failed to overcome the statutory presumption consequent on plaintiff's registration. (*Aluminum Fabricating Co. v. Season-All Window Corp.*, 259 F. 2d 314, 316; *Pastificio Spiga Societa per Azioni v. De Martini Macaroni Co.*, 200 F. 2d 325.)

Moreover, plaintiff affirmatively has established by the preponderance of evidence, largely uncontradicted, that plaintiff's magazine "Modern Romances" was the only magazine incorporating the word "Modern" in its title which, for many years prior to defendant's publication of "Modern Confessions", was directed to that segment of the female population primarily interested in such romance and confession fiction.

It is unnecessary to establish infringement of a trade-mark to establish deception. It is the liability to deception which justifies relief by way of injunction. (*Taendsticksfabriks Aktiebolagat Vulcan v. Myers*, 139 N. Y. 364.) In any event, defendant's admission that the word "Modern" was selected so as to distinguish its magazine "from the bulk of the confession magazines" serves to emphasize the intention to simulate and its similarity to the title of plaintiff's magazine.

The evidence also establishes unfair competition. The word "Confessions" as part of a title of a publication containing romantic and confession stories has been held to be descriptive. (*Fawcett Pub. v. Real Confessions*, 22 Misc 2d 738, affd. 272 App. Div. 867.) However, the combination of the common words forming the title of "Real Confessions" was held in *Fawcett* to be subject to protection from appropriation. And in *Dell Pub. Co. v. Ultem Pub.* (171 Misc. 159) it was held that the word "Modern" contained in the title "Modern Movies" was unfairly in competition with the plaintiff's magazine entitled "Modern Romances".

Prior to defendant's publication of "Modern Confessions", therefore, the decisional law was that the word "Confessions" was descriptive and the word "Modern" as applied to plaintiff's magazine was a fanciful and arbitrary word having a secondary meaning as applied to plaintiff's magazine. Never-

theless, defendant, ostensibly for the purpose of distinguishing its publication from others in the romance and confession sphere, seized upon the title "Modern" which not only served its said purpose but also served to suggest an origin common with that of the plaintiff's publication. Under the stated circumstances, defendant's minimum legal obligation was to affirmatively distinguish its product from the plaintiff's. (*Pocket Books* v. *Meyers,* 292 N. Y. 58; *Brown & Bigelow* v. *Remembrance Advg. Prods.,* 279 App. Div. 410, 415, affd. 304 N. Y. 909.)

The selection of marks similar to a successful competitor's is always suspect. (*Florence Mfg. Co.* v. *Dowd & Co.,* 178 F. 73.) This is patently so when the segment of the public involved does not stop to analyze a product because of the brief interval usually allotted to the purchase of a magazine of the type here involved. Such transactions are to be distinguished from those which involve substantial expenditures and extended preparations as in *Eastern Constr. Co.* v. *Eastern Eng. Co.* (246 N. Y. 459, 464).

The secondary meaning of the title of plaintiff's magazine is unaffected by its use of the "Dell" symbol in conjunction therewith. The joint use served to identify plaintiff as the source of the modern group of publications. Thereby the defendant's utilization of the word "Modern" in this field is likely to mislead the public which may indulge the assumption that defendant's publication is, in fact, the plaintiff's and, therefore, accord the defendant's publication the trade and credit which it might otherwise extend to the plaintiff's magazine.

Moreover, it is clear that the defendant knowingly and intentionally availed itself of the use of plaintiff's mark for the purpose of appropriating its property. In such circumstances all other considerations are secondary and the defendant should be enjoined. (*Neva-Wet Corp.* v. *Never Wet Processing Corp.,* 277 N. Y. 163, 178; *Forsythe Co.* v. *Forsythe Shoe Corp.,* 234 App. Div. 355, mod. 259 N. Y. 248; *Munro* v. *Tousey,* 129 N. Y. 38; *Philadelphia Stor. Battery Co.* v. *Mindlin,* 163 Misc. 52, 55.)

The judgment should be affirmed.

STEVENS and BASTOW, JJ., concur with VALENTE, J.; RABIN, J. P., and MCNALLY, J., dissent and vote to affirm in dissenting opinion by MCNALLY, J.

Judgment reversed on the law and on the facts, and the complaint dismissed, with costs. Settle order.