**PIC DESIGN CORPORATION, Plaintiff,**

v.

**STERLING PRECISION CORP. and Designatronics, Inc., Defendants.**

United States District Court
S. D. New York.
June 29, 1964.

James & Franklin, New York City, for plaintiff, Harold James, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for defendants, Horace S. Manges, Jacob F. Raskin, New York City, of counsel.

RYAN, Chief Judge.

PIC Design Corporation has filed this suit for copyright infringement of its trade catalogs and for unfair competition against Sterling Precision Corporation and Designatronics, Inc. This Court has jurisdiction under 28 U.S.C. § 1338 and 15 U.S.C. § 1125(a).

Plaintiff and defendant Designatronics are New York corporations and maintain their principal places of business within the State. Defendant Sterling was organized under the laws of Delaware and maintains its principal place of business in New York.

Prior to 1954, precision gears—as differentiated from commercially standard gears—were apparently made only to order. Plaintiff then marketed an extensive line of precision instrument components and kept them in inventory for immediate delivery. The obvious savings to users from such prompt shipment of components resulting from plaintiff's procedure increased plaintiff's business, brought larger profits, and induced competition in the area from, among others, the defendant Sterling. Prior to the commencement of this suit and on March 1, 1961, Sterling sold its precision component division to the defendant Designatronics who was subsequently joined as a defendant in this suit.

To promote the sale and marketing of its line of components, plaintiff compiled and published a series of catalogs, all of a same general format, containing precision drawings of each particular component and a series of tables detailing physical and mathematical characteristics of each. The idea of these catalogs was not original with plaintiff but the application to the precision component field was new. The Boston Gear Catalog (Exhibit 101) preceded PIC's in conception and circulation but was concerned with the standard commercial run of gears. The Boston Gear Catalog is distinguishable in format—as well as content—from those of plaintiff and defendants primarily in that it used photographs of the components instead of schematic drawings. It is conceded that much of the material in its books was originated by plaintiff.

Plaintiff complied with the provisions of Title 17 U.S.C. and secured copyright registration certificates covering its catalogs. Adequate legal notice of copyright is to be found in each of the catalogs. These copyrights are still in effect and plaintiff has retained full control and ownership over them.

Defendant Sterling subsequently entered into competition with plaintiff and issued the series of catalogs which allegedly infringe on plaintiff's copyrights. There is no question but that the defendant Sterling had actual knowledge of plaintiff's operations, catalogs and the copyrights relating to them before entering the field and promulgating its own catalogs. The use of such catalogs is indispensable to the successful operation of this business. The catalogs are distributed to engineers and designers who require the technical specifications they contain, and to buyers and purchasing agents, who rely on them for the selection of precision components. The catalogs are distributed at trade exhibitions and by direct mail throughout the country.

When in March, 1961, Sterling sold its precision components business to the defendant Designatronics, Sterling permitted Designatronics to use its name on the new catalogs thereafter issued by the latter. Testimony indicates that for a period of one year Sterling agreed to indemnify Designatronics against any damages in connection with the current litigation. During this period Designatronics issued catalogs Nos. 65, 66 and 67. Subsequently, Designatronics issued catalog No. 70 which admittedly differs to some degree from both plaintiff's catalogs and defendants' prior catalogs. Plaintiff claims that the distinction is insufficient to avoid a finding of copyright infringement. Designatronics has ceased publication of all prior catalogs and is now issuing only its catalog No. 70.

Plaintiff alleges two primary claims in this suit.

The first claim is for copyright infringement of its series of catalogs culminating in its PIC Master Catalog No. 20, by the defendant Sterling's catalogs Nos. 50, 60, *Ultra Precision Supplement* Nos. 61, 62, 63 and 64 and by defendant Designatronics' catalogs Nos. 65, 66, 67 and 70. Plaintiff asserts defendants copied (and so infringed on its copyrights) its drawings of the precision components, all of which are claimed to be original with the plaintiff, the tables of specifications that are generally printed under the drawings and refer to the items thus illustrated, and the allegedly original and copyrightable general for-

mat or "visual impact" of the PIC catalog.

Plaintiff's second claim lies in the area of unfair competition. Plaintiff alleges that the format of its catalogs is so unique with it as to have acquired a "secondary meaning" and that defendants committed acts of unfair competition in making their catalogs so similar in general design and format as to appropriate to themselves the goodwill and reputation the plaintiff has established over the years. Plaintiff further contends that defendants' actions in so doing were intended to, and in fact did, cause confusion in the trade so as to siphon off business from plaintiff by creating the impression of a connection between plaintiff and defendants.

Plaintiff further alleges acts of unfair competition by the defendants in that they falsely claimed to have in stock all of the items in their catalogs ready for immediate delivery when in fact their supplies on hand were inadequate to meet this purpose. To satisfy demands for such components as were not on hand, defendants allegedly purchased the items from plaintiff and passed them off as their own. Plaintiff claims that by so doing, defendants unfairly deprived plaintiff of business reasonably expected since it is the custom in the trade for purchasers to buy as many required components as possible from a single supplier.

Plaintiff seeks an injunction restraining both defendants from further publishing and circulating the offending catalogs, from any further infringement of plaintiff's copyrights, requiring defendants to destroy all catalogs, plates and drawings which infringe plaintiff's copyrights, an accounting for profits and damages, and an award for costs and counsel fees. Plaintiff also seeks an injunction barring further acts of unfair competition.

Item "7A." of the Pre-Trial Order provides:

"Plaintiff need not prove actual damages nor the extent thereof at the trial, proof of damages being reserved for a separate proceeding pending a decision on the question of defendants' liability."

*Copyright Infringement*

The published items are trade catalogs and are copyrightable under 17 U.S.C. § 5(a), even though the subject matter contained in the catalog is within the public domain. This is so even though the same facts could be gathered by another through independent research. One must do this research himself and not merely copy the material from one who has already gathered, arranged and collated it. This copyright also covers "all the copyrightable component parts of the work copyrighted * * * The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this title." 17 U.S.C. § 3; Markham v. A. E. Borden Co., 1 Cir., 206 F.2d 199 (1953). Defendants cite Mathews Conveyor Co. v. Palmer-Bee Co., 6 Cir., 135 F.2d 73, 84 (1943) for the proposition that, "From numerous cases it may be concluded that in order to sustain an action for infringement of a copyright, a substantial copy of the whole, or a material part, must be reproduced." This is not inconsistent with Markham when it is considered that the "material and substantial" test refers to the quality and importance of the copying, not merely the number of items copied. Perkins Marine Lamp & Hardware Co. v. Goodwin Stanley Co., D.C., 86 F.Supp. 630 (1949).

Plaintiff's catalogs are even more clearly entitled to copyright protection in that much of the contents of the catalogs—particularly though not exclusively the drawings—are the result of plaintiff's creativity. The precise degree of originality involved here is largely immaterial since, "it is now settled beyond question that practically anything novel can be copyrighted." Dan Kasoff, Inc. v. Novelty Jewelry Co., Inc., 2 Cir., 309

F.2d 745, 746 (1962). Thus, plaintiff's catalogs and the drawings of the components contained therein are found to be copyrightable and entitled to protection from copying.

It does visually appear that several of the drawings in defendants' catalogs are identical with those appearing in plaintiff's PIC No. 20. Others are similar but reversed, either as a result of independent—and so non-infringing—work, or in an attempt to disguise outright copying. Expert testimony at the trial was to the effect that some similarity in a finished drawing by an experienced draftsman to one of the same object produced by another draftsman is to be expected from the nature of the object itself. The components parts so pictured in all the catalogs before us are in the public domain and plaintiff has no exclusive right to produce and illustrate them. It is the illustration that is protected, not the object itself. By the same token, however, this same expert testimony indicates that sufficient latitude exists in the draftsman's art of illustration to make suspect any drawing exactly reproducing one in a prior circulated catalog.

We shall consider separately Designatronics' No. 70 and defendants' prior catalogs, since the No. 70 is the only one of defendants' catalogs currently being circulated. It is evident that so many examples of copying do exist in defendants' prior catalogs as to impel condemnation of them in totality. One typical example of this copying is the drawing on page 12 of PIC No. 20 and on page 85 of Sterling No. 60. Such differences as would seem to exist appear to be more of an attempt at disguise than the product and result of independent work. The "cluster gear" depicted on page 161 of Sterling No. 60 is identical with the one on page 102 of PIC No. 20, except that the Sterling drawing is printed upside down. The same is true of the non-metalic spur gears shown respectively at pages 269 of PIC No. 20 and 174 of Sterling No. 60. Again, the pinion shaft illustrated at page 340 of Sterling No. 60 is strikingly similar to one at page 44 of PIC No. 20.

Similar instances of copying are to be found not only throughout Sterling No. 60 but also in the other offending Sterling catalogs.

For example, the first three pages of drawings in The Sterling Ultra Precision Supplement are virtually identical with pages 28 to 30 of PIC No. 20, both as to the shafting and the ball bearings. The drawing of the "cluster gear" at page 161 of Sterling No. 60 was identically reproduced on page 91 of Designatronics No. 70. Inasmuch as the former was copied—though turned upside down —from page 102 of PIC No. 20, the latter constitutes an equally flagrant infringement of plaintiff's copyright. The drawings on page 12 of PIC No. 20 and page 11 of Designatronics No. 70 are indeed very similar, especially in view of the fact that the drawings represent a concept rather than any given item, the nature of which would tend to excuse identity of design.

It is found that the drawings listed below from Designatronics No. 70, in addition to the foregoing, were in fact copied from plaintiff's PIC No. 20:

| Designatronics No. 70 | | PIC No. 20 |
|---|---|---|
| (1) | 19 – 58 | 47 – 79 |
| (2) | 59 – 90 | 81 – 101 |
| (3) | 117 – 138 | 124 – 137 |
| (4) | 139 – 155 | 138 – 142 |
| (5) | 157 – 178 | 145 – 158 |
| (6) | 179 – 195 | 159 – 163 |
| (7) | 196 – 204 | 175 – 183 |
| (8) | 243 – 245 | 212, 214, 216, 218, 220, 222 |
| (9) | 259 – 262 | 322 – 324 |
| (10) | 274 | 282 |
| (11) | 275 | 281 |
| (12) | 276 – 277 | 278 – 279 |
| (13) | 340, 341 | 28 – 30 |
| (14) | 419 | 37 |

In regard to the tables of specifications claimed to have been copied from the plaintiff's catalogs and allegedly infringing on the copyrights, we observe that the figures in these tables are facts

in the public domain determined by commonly known and applied formulae. As such, the numbers cannot be copyrighted. It would be impossible to tell who worked out a formula in order to arrive at the correct figure, and who merely copied figures from someone else. Where, however, the same errors (or "printer's traps") appear in an earlier and later publication, it is fair and reasonable under the circumstances here present to infer copying. This occurred at page 444 of Sterling No. 60 and page 15 of PIC No. 20; no such identity appears between PIC No. 20 and Designatronics No. 70.

A separate argument is made by the plaintiffs for their claim to protection for the tabular arrangements of these figures. If numbers of formulae are facts in the public domain and so not subject to copyright, an original and novel arrangement of these facts is copyrightable.

While the degree of originality necessary to sustain a copyright is very low (Dan Kasoff, Inc. v. Novelty Jewelry Co., Inc., supra), the copyright covers only a specific mode of expression of an idea. The idea is public property and there is no infringement unless the mode of expression is identical. Substantial similarity is not infringement, " * * * where such similarity is necessary because the idea or system being described is the same." Gaye v. Gillis, D.C., 167 F.Supp. 416, 418 (1958). This is the case before us now. To some extent the substantial similarities which do appear as to the arrangement of the tables in PIC No. 20 and Sterling No. 60 are a natural result of the subject matter. There are a very few ways of listing such information and the general method used by both plaintiff and defendants is logical and to be expected.

Plaintiff admits that Designatronics No. 70 does differ from its PIC No. 20 catalog in regard to the tabular arrangements but asserts that these very changes are evidence of prior copying and a "guilty conscience." This is a most specious argument. An arrangement that was changed to avoid infringement cannot itself be held to infringe because it is now less like the copyrighted article than it was before the change. The tabular arrangement in Sterling No. 60 was not so identical to that in PIC No. 20 as to justify a holding that it was copied from the latter—particularly in view of the nature of the material.

We find that the tabular arrangement in Designatronics No. 70 does not infringe on any copyright plaintiff may have of the tabular arrangement in PIC No. 20.

It is diffcult to see how, even under the extremely liberal view and approach taken by Dan Kasoff, Inc. v. Novelty Jewelry Co., Inc., (supra), plaintiff can claim a valid copyright on the "format" or "visual impact" of the PIC catalog.

Plaintiff's catalog is a handbook measuring 6" x 3¾"; Sterling No. 60 is 6" x 4¼"; Designatronics No. 70 is 6¼" x 4". The similarity is less impressive when one considers that a book designed to be conveniently held in one hand must be approximately of this size.

The cover designs of all three catalogs are totally dissimilar. The fact that most of the pages in all three catalogs consist of drawings of the particular item followed by tables relating to its specifications is not so persuasive as to indicate copying in light of the logic of this method of presentation. That there are only limited ways of producing such a catalog in handbook form is further illustrated by the Boston Gear Catalog which antedates plaintiff's PIC No. 20, and from which plaintiff admittedly copied. The primary difference is that Boston Gear utilizes photographs of gears in addition to drawings of the items.

The "visual impact" of all these catalogs is in some aspects quite similar; this is inherent in the nature of such a presentation, and may not validly be afforded the protection of a copyright. But, we find that each of the catalogs is sufficiently different—within the limits

necessarily set by the nature of the catalogs—to avoid any infringement. This is particularly so in relation to PIC No. 20 and Designatronics No. 70. The page layout of the latter differs from that of PIC No. 20 in many aspects—not the least of which is the name "Sterling Instrument" running vertically down the outside edge of each page of Designatronics No. 70. The "visual impact" resulting therefrom is distinctive and in no way infringes on plaintiff's catalog.

### Unfair Competition

"Absent a patent or other form of statutory protection, there is nothing to prevent a manufacturer from marketing and selling a product merely because it is similar in appearance to one already placed on the market by a competing manufacturer. The law protects the first manufacturer only if he shows that his product has acquired a 'secondary meaning', because the particular design and shape is associated in the public mind with that particular (though perhaps anonymous) source and the public is moved to purchase the competitor's product in the belief that it comes from such source [citing cases]." Remington Research, Inc. v. Modern Aids, Inc., D.C., 170 F.Supp. 7, 11 (1959).

We find that there is no credible testimony that plaintiff's catalogs have acquired a "secondary meaning". If any catalog can at all be said to have acquired a "secondary meaning" it would be the old "Boston Gear Catalog" (Exhibit 101), antedating both plaintiff's and defendants' catalogs. There is nothing in the size, shape, contents, format or general nature of any handbook catalog before us, sufficiently unique as to support an inference of a link between the public mind and that catalog.

Plaintiff does urge that defendants have pursued a policy of deliberately attempting to create confusion within the trade by "adopting and simulating plaintiff's advertising and publicity materials," including plaintiff's catalogs, and in so doing have committed acts of unfair competition.

"Stated otherwise, by employing in the design of their own format the several features used by the plaintiff—elements which had passed into the domain of things public and which gave to the defendants' reprints an appearance similar to the plaintiff's product—fairness in competition required of the defendants that their reprints convey to the purchasing public information which identified their product and reasonably distinguished it from that of the plaintiff. [citing cases]" Pocket Books, Inc. v. Meyers, 292 N.Y. 58, 62, 54 N.E.2d 6, 8.

In that suit the New York Court of Appeals concluded that the defendants had met this standard and had sufficiently distinguished their product from plaintiff's. (See also Avon Periodicals, Inc. v. Ziff-Davis Pub. Co., 282 App.Div. 200, 122 N.Y.S.2d 92). Applying this standard, it is evident that the defendants here have complied with at least these minimum standards. This is particularly so with Designatronics No. 70.

The primary item of identification of any book is the cover. We find no similarity in the covers of the catalogs of the three parties to this suit. The extent of similarity among the catalogs as a whole has been discussed above in reference to plaintiff's claim of copyright on the "visual impact" of its catalog.

Plaintiff claims (urging Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc., 2 Cir., 221 F.2d 464 (1955)) that it is not necessary to show actual confusion but only a reasonable expectation that confusion will result. "Mastercrafters" involved a product which had acquired a "secondary meaning;" it is not applicable to the facts now before us.

Plaintiffs argue that the showing of actual confusion on the part of the public is *per se* proof of defendants' failure

to sufficiently disassociate his product from plaintiff's in the public mind. Testimony at the trial produced instances of misplaced orders which plaintiff claims were induced by the excessive similarity of the catalogs. Rebuttal testimony indicated that such errors as in fact occurred were rather the result of clerical errors. Whatever the cause, such incidents were so rare as to preclude the inference of any general pattern of confusion among the buying public.

It is to be noted also that the particular segment of the public involved in the purchase of precision instrument components are specially trained and educated people used to purchasing these technical items through such catalogs. They may be expected to exercise a commensurate degree of care when placing such orders. It would be unreasonable to require any competitor to act as an insurer against all errors in the placing of business orders. Plaintiff contends, however, that it, "is just as entitled to be protected against confusion by the unskilled as against confusion by the skilled (American Chicle Co. v. Topps Chewing Gum, Inc. (C.A.2, 1953) 208 F.2d 560, 563; Harold F. Ritchie, Inc. v. Chesbrough-Pond's Inc., (C.A.2, 1960) 281 F.2d 755, 761)." The citations were of trade mark suits involving chewing gums and hair tonics respectively. These products are produced for a mass market and the trademarked package is the key to sales. The suits are in no way analogous to the situation present in the instant suit.

We find that plaintiff's claim of unfair competition arising out of the alleged confusion is without merit.

■ Plaintiff also advances a claim of unfair competition caused by defendants' allegedly false representation, of having all items in the catalog on hand for immediate delivery of orders. It is difficult to see how this would affect plaintiff in any way, even assuming the truth of the allegation. If defendant is unable to live up to its advertising, it is for its customers to complain—not

a competitor. Plaintiff is totally without standing to complain of this as constituting an act of unfair competition.

■ Plaintiff claims that as a result of the alleged false advertising defendant made a practice of buying a given item from plaintiff through an intermediary, removing plaintiff's identifying markings and replacing them with its own, and then reselling the item to the customer. This is the reverse of the standard "palming off" case where one trader sells his product as that of another. The latter is actionable *per se*. Midwest Plastics Corp. v. Protective Closures Co., 285 F.2d 747 (1960). Plaintiff claims that this doctrine, as exemplified by Midwest Plastics, is equally applicable to this case of "reverse palming off." While there was at least one case of reverse palming off in Midwest Plastics, Judge Murrah's opinion speaks more in terms of standard palming off, even while citing International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). The latter decision held actionable the defendant's issuing plaintiff's news compilations as its own under the theory that,

> "The parties are competitors in this field; and, on fundamental principles, applicable here as elsewhere, when the rights or privileges of the one are liable to conflict with those of the other, each party is under a duty so to conduct its own business as not unnecessarily or unfairly to injure that of the other [citing cases]." 248 U.S. 215, 235, 39 S. Ct. 68, 71.

It is to be noted, however, that the International News Service case has not been given the scope and effect such language would seem to demand. Subsequent cases exhibit a lack of judicial enthusiasm for a full extention of this doctrine; e. g., Speedry Products Inc. v. Drimark Products, Inc., 2 Cir., 271 F.2d 646 (1959).

■ In 1962, the New York courts denied any common law right of action in a case where the defendant bought

bongo drums from plaintiff, removed the latter's trade marks and identifying characteristics, replaced them with its own, and used them as samples to the trade of its own brand of bongo drums. It was held that

"The use of its own trade-mark amounted to a representation that defendant and not the plaintiff stood behind the sample chattel and behind the chattels bought in reliance on the sample. This is the antithesis of palming off and the plaintiff demonstrates no actionable rights in the defendant's use of its own trade-mark on a product it bought to use in promoting its own products." Mastro Plastics Corp. v. Emenee Industries, Inc., (1962) 16 A.D.2d 420, 228 N.Y.S.2d 514, 517; affd. no opinion 12 N.Y.2d 826, 236 N.Y.S. 2d 347, 187 N.E.2d 360.

On appeal, the Court of Appeals of New York affirmed the decision of the Appellate Division (supra) but granted plaintiff leave to serve an amended complaint based on 15 U.S.C. § 1125(a)—the Lanham Act. We are unable to find any actionable wrong at common law under the facts of this case insofar as defendants' actions in purchasing items from plaintiff for resale are concerned.

### Lanham Act

■ Plaintiff finally asserts that defendants' actions constitute an actionable violation of § 1125(a), 15 U.S.C. This section provides in essence that one making, "a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same * * * shall be liable to a civil action by any person * * * who believes that he is or is likely to be damaged by the use of any such false description or representation." 15 U.S.C. § 1125(a).

Defendant attacks plaintiff's standing to sue as not being one who "believes that he is or is likely to be damaged by the use of any such false description." The statute essentially provides a cause of action for unfair competition. Plain-

tiff competes with defendants in the same line of business and clearly falls within the class of permissible plaintiffs denominated by the statute. Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., D.C., 23 F.R.D. 155 (1959).

■ Defendant claims that section 1125(a) is not applicable to this matter because the word "origin" is limited in meaning to "geographic origin" (Federal-Mogul-Bower Bearings Inc. v. Azoff, D.C., 201 F.Supp. 788—1962) and there is no allegation of a false representation of geographic origin in this case. This view was explicitly refuted by the Court of Appeals for the 6th Circuit in reversing the District Court. The Court held:

"We are further of the opinion that the word, 'origin,' in the Act does not merely refer to geographical origin, but also to origin of source or manufacture." Federal-Mogul-Bower Bearings, Inc. v. Azoff, 6 Cir., 313 F.2d 405, 408 (1963)

The Court continued:

"The legislative history of the Lanham Act indicates that Congress intended to fashion a new federal remedy against a particular kind of unfair competition that the common law had effectively protected. [citing cases]" 313 F.2d 405, 409.

In so finding the Court is in total agreement with the Court of Appeals for the 3rd Circuit in L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (1954). The District Courts in this Circuit have long followed the view of the L'Aiglon case. See American Rolex Watch Corp. v. Jack Laufer & Jan Voort, Inc., D.C., 176 F.Supp. 858 (1959); Zandelin v. Maxwell Bently Mfg. Co. Inc., D.C., 197 F.Supp. 608 (1961); Scarves by Vera Inc. v. United Merchants & Manufacturers, Inc., D.C., 173 F.Supp. 625 (1959). There is no substance to defendants' interpretation of the term "origin" as used in the statute.

■ Beyond questions of origin, testimony at the trial indicates that defendant Sterling Precision Corp. did order and receive at least one anti-backlash

miter gear from plaintiff through an intermediary, and then sold such gear to EKAY Precision Company. This transaction occurred sometime after the filing of this suit. At the time of sale to the intermediary the gear had the identifying letters "PIC" etched into it. When the gear was received by EKAY the letters had been removed and there were no identifying marks of any nature on it. The pertinent section of the Lanham Act makes actionable the *application* of "a false designation of origin," not the removal of a true designation.

 When the gear was received by EKAY it was packaged in a box marked Sterling Precision Corp. This, however, is only a showing of who shipped the product contained inside, not necessarily who manufactured it. Had Sterling placed its own mark on the gear itself after having removed PIC markings, and then sold the item, PIC might have come within the language of the Lanham Act. Here, however, there is a failure of proof on a critical point. What Sterling did, though perhaps a violation of good business ethics, does not constitute a violation of 15 U.S.C. § 1125(a). To hold otherwise would be to forbid any repackaging, resale, or reshipment of any item not manufactured by the shipper but sold under his name. Recognition of such a situation would be inadmissible.

It is concluded that:

1. Defendants Sterling Precision Corp. and Designatronics, Inc. should be enjoined from any further promulgation in any manner of Sterling Catalogs Nos. 50, 60, Ultra Precision Supplement Nos. 61, 62, 63 and 64 and of Designatronics Catalogs Nos. 65, 66 and 67. Said catalogs are found to be so inundated with infringing drawings as to be tainted in their totality.

2. Defendant Designatronics Inc. should be enjoined from any further use of the drawings found above to infringe on plaintiff's copyrights, and should be directed to physically remove from all catalogs No. 70 on hand such drawings, and to deliver up for destruc-tion or to destroy all plates and drawings used in the production and printing of such infringing drawings.

3. In accordance with item "7–A" of the Pre-trial Order of this Court the parties are ordered to settle an interlocutory judgment within twenty (20) days from the filing of this opinion so providing and for the appointment of a special master to assess damages.

The above shall constitute findings of fact and conclusions of law as provided by Rule 52(a), Federal Rules of Civil Procedure. So ordered.